IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SCOTT GOOLD,

       Plaintiff,

vs.                                                                 Civ. No. 03-00199 MV/RLP

CITY OF ALBUQUERQUE, *et al*.,

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants Martin Chavez, Greg Payne and the Office of the Mayor's Motion for Summary Judgment, filed January 26, 2004, **[Doc. No. 43]** and All Defendants Except Martin Chavez, Greg Payne, and the Office of the Mayor's Motion to Adopt by Reference Defendants Martin Chavez, Greg Payne and the Office of the Mayor's Motion for Summary Judgment, filed January 26, 2004, **[Doc. No. 45]**.[1] The Court, having considered the motions, response, reply, relevant law, and being otherwise fully informed, finds that the motions are well-taken and will be **GRANTED**.

### FACTUAL BACKGROUND

Plaintiff Scott Goold's claims arise from his interactions with Defendants in relation to

---

[1] Plaintiff did not file a response to the motion to adopt by reference. Failure to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion. D.N.M.LR-Civ. 7.1(b). Accordingly, All Defendants Except Martin Chavez, Greg Payne, and the Office of the Mayor's Motion to Adopt by Reference Defendants Martin Chavez, Greg Payne and the Office of the Mayor's Motion for Summary Judgment shall be granted. The term "Defendants" will be used to refer to all remaining defendants.

two Albuquerque neighborhood associations: the New Holiday Park Neighborhood Association, which is an unincorporated association organized under the City of Albuquerque's Neighborhood Recognition Ordinance, and the District 8 Coalition of Neighborhood Association, which is an association of neighborhood associations within Albuquerque's District 8. Plaintiff was elected president of the New Holiday Association in May 2002. Two months later, he was also elected President of the District 8 Coalition. The two associations were recognized by the City of Albuquerque's Office of Neighborhood Coordination pursuant to the Neighborhood Recognition Ordinance.

In October and November, 2002, the Office of Neighborhood Coordination received complaints about Plaintiff's administration of the two associations. On October 25, 2002, Herbert Howell, the Division manager for the Office of Neighborhood Coordination informed Plaintiff that his office had received communications from various neighborhood association representatives regarding the District 8 Coalition website. The communications suggested that the website was being used to promote the Plaintiff's own "Self Interest Topics" and not neighborhood association related issues.

In November 2002, the New Holiday Association Vice-President, Seth Heath, asked Plaintiff to resign and later formally called for a vote of the membership to remove Plaintiff as president of the New Holiday Association. Others, including Stephani Winklepeck, an Office of Neighborhood Coordination staff member assigned to District 8, spoke in favor of Heath's call to remove Plaintiff from the presidency of the New Holiday Association.

On November 13, 2002, the day after the Association meeting, Plaintiff submitted a complaint to Albuquerque's Mayor, Martin Chavez. The complaint alleged that Defendants

Herbert Howell and Winklepeck violated Plaintiff's rights under City of Albuquerque ordinances and the First Amendment, through their actions at the November Association meeting.

On November 19, 2002, Victor Chavez, Planning Director for the City of Albuquerque sent Plaintiff a letter identifying several possible violations of the Neighborhood Recognition Ordinance by the New Holiday Association. Those possible violations included reports of Plaintiff interfering with the New Holiday Association's treasurers attempts to perform her duties; failing to inform the New Holiday Association officers that Plaintiff had closed the Association's mailbox and was having mail sent to his home; and failure to file a copy of the Association's amended bylaws with the Office of Neighborhood Coordination. The letter closed by stating that if the issues were not resolved within a week, the Office of Neighborhood Coordination would consider withdrawing recognition of the New Holiday Association. Plaintiff did not provide a response to the alleged deficiencies for several weeks.

Meanwhile, on December 2, 2002, Herbert Howell wrote to Plaintiff stating that the Association's recognition status was being removed. Howell noted that there did not appear to have been any attempt to resolve the issues raised in the November 19, 2002 letter. Plaintiff later filed a complaint with Mayor Chavez protesting the loss of recognition status.

In January 18, 2003, Plaintiff informed Mayor Chavez that Plaintiff and his family intended to ask David Siebers—an individual who had been convicted and served time for a sex crime and had relocated to the Albuquerque area—to live with them. Defendant Payne--the then City Councilor for the Albuquerque City Council, District 8, which encompassed the boundaries of the New Holiday Association--sent a form letter to the New Holiday Association residents, expressing concern over Plaintiff's invitation to Mr. Siebers. Mr. Payne also wrote to Plaintiff on

3

several occasions expressing his opposition to Plaintiff's inviting Siebers to live with him.

On January 23, 2003, Councilman Payne hosted a neighborhood meeting to discuss the Plaintiff's invitation to Siebers. Later, in February 2003, the New Holiday Association membership voted to remove Plaintiff from his position of President and further voted to dissolve the New Holiday Association.

Based on these facts, Plaintiff brought four counts against the various private and governmental defendants. First, Plaintiff asserts that his First Amendment right to free speech has been infringed because he was denied the right to be recognized as a president of a neighborhood association in retaliation for his protected speech. Second, Plaintiff alleges a violation of the Due Process Clause on the grounds that he and the New Holiday Association were deprived of their rights, without due process, in the revocation of the New Holiday Association's recognition status. Third, Plaintiff asserts that his First Amendment right to free association was denied because he and the New Holiday Association were denied the right to be recognized as sole political representatives of New Holiday Park because of Plaintiff's attempts to express the political agenda of the New Holiday Association and to express opinions regarding the government's management of David Siebers. Fourth, Plaintiff asserts that Defendants breached an express contract through their removal of the New Holiday Association's recognition status.

## LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable

to the nonmoving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chem. Co., Inc.,* 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non- moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Pittsburg & Midway Coal Min. Co. v. Yazzie,* 909 F.2d 1387, 1427 (10th Cir. 1990), the burden on the moving party may be discharged by demonstrating to the court that there is an absence of evidence to support the nonmoving party's case, *Celotex,* 477 U.S. at 325.  In such a situation, the moving party is entitled to judgment as a matter of law "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 322.

**DISCUSSION**

A.	**Plaintiff's Constitutional Claims**

In moving for judgment on Plaintiff's constitutional claims, the remaining individual Defendants argue that their conduct did not violate clearly established statutory or constitutional rights which a reasonable person would have known and, therefore, that they are entitled to qualified immunity. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). The City of Albuquerque and the City of Albuquerque agency Defendants assert that Plaintiff does not have standing to raise claims for equitable relief. In addition, municipalities cannot be held liable under Section 1983 on a *respondeat superior* theory for merely employing a tortfeasor. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978). Rather, municipalities are subject to liability only for their official policies or customs: "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under 1983." *Id*. at 694.

The Court's review of Plaintiff's allegations and the evidence he has adduced, or could adduce,[2] in support of these allegations demonstrates that the qualified immunity and policy or custom analyses are unnecessary because Plaintiff has not established that Defendants violated any of his constitutional rights, whether clearly established or not or whether pursuant to a custom or policy.

---

[2] Plaintiff has submitted no evidence in opposition to Defendants' Motion for Summary Judgment. In light of the fact that Plaintiff is proceeding *pro se*, the Court will assess his claims assuming that Plaintiff would have been able to produce some evidence in support of his allegations—Plaintiff, at least, could have testified himself regarding some of his allegations.

### 1.      Plaintiff's Freedom of Speech Claim

In his first count, Plaintiff alleges that Defendants denied him the right to be recognized as the president of the New Holiday Association in response to some of his activities that are protected by the First Amendment.  Generally, "[a]ny form of official retaliation for exercising one's freedom of speech . . . constitutes an infringement of that freedom."  *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).  The Tenth Circuit has adopted a three-part test for assessing a claim of retaliation for engaging in First Amendment protected activities made against a defendant who is neither an employer nor a party to a contract with the plaintiff.  *Id.* at 1212-13.  Under the test, the plaintiff must show that (1) he was engaged in a constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff"'s exercise of constitutionally protected conduct.  *See id*. at 1212.

#### i.      Constitutionally Protected Activity

Plaintiff has generally described three different forms of speech that he asserts are protected conduct:  1) filing complaints with Mayor Chavez; 2) expressing opinions regarding amendment of Albuquerque's Clean Indoor Air Ordinance; and 3) expressing opinions regarding the City of Albuquerque's treatment of David Seibers.

Generally, speech on matters of public concern is protected under the First Amendment.  *See, e.g.*, *Connick v. Myers*, 461 U.S. 138, 143 (1983).  Matters of public concern are those which can "be fairly considered as relating to any matter of political, social, or other concern to the community."  *Id.* at 146.

The Court finds that each of the forms of conduct described by Plaintiff constitute protected conduct.[3] The seeking redress of grievances from government officials, public comment on proposed legislation, and public comment on highly politicized acts by public officials are all forms of speech that the First Amendment was meant to protect. *See, e.g.*, *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988) ("Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import."). Accordingly, the Court finds that Plaintiff meets the first prong establishing First Amendment retaliation.

### ii.     Chilling Effect of Injury

It is not immediately clear what injury Plaintiff suffered that he claims would chill a continuing engagement in the protected activity. Plaintiff does state that he was denied the right to be "recognized" as a president of a neighborhood association. The Court interprets this as asserting that Defendants injured Plaintiff by removing the recognition status of the New Holiday Association. The question before the Court, therefore, is whether the revocation of the recognition status of a neighborhood association because of the association president's constitutionally protected activity would chill a person of ordinary firmness from continuing to engage in that protected activity. The Court doubts that the question can be answered in the affirmative.

The asserted injury certainly does not rise to the level of conduct the Tenth Circuit uses as examples of prohibited retaliatory acts: prosecution, threatened prosecution, bad faith

---

[3] Whether speech is protected under the First Amendment is a question of law to be determined by the Court. *See, e.g., Connick*, 461 U.S. at 148 n.7.

investigation, and legal harassment. *See Worrell*, 219 F.3d at 1212. Further, Defendants did not remove Plaintiff from his presidency of the association; instead they merely removed recognized status of the association. Plaintiff remained president of the "unrecognized" association until its membership voted to remove him from the presidency and dissolved the association. It is unlikely that this injury would have a sufficient chilling effect sufficient to support a First Amendment retaliation claim. The Court, however, need not finally answer this question because the third prong of the First Amendment retaliation test is dispositive of Plaintiff's claims.

### iii. Defendants' Motivation for Adverse Acts

Plaintiff has presented no argument or evidence in support of his assertion that his protected speech was a motivating factor in Defendants' adverse acts. While the question of whether protected conduct was a motivating factor is frequently a factual issue to be determined by a jury, *see e.g.*, *Conaway*, 853 F.2d at 796 n.8, the plaintiff must present *some* evidence showing the existence of a material issue of fact regarding the defendant's motivation. *See Hom v. Squire*, 81 F.3d 969, 974-5 (10th Cir. 1996) (finding that a plaintiff's mere belief that an adverse action was taken against him because of his protected conduct is insufficient to defeat a motion for summary judgment).

Plaintiff has made absolutely no showing that any of the alleged adverse actions against him by Defendants were motivated by his protected activity. Significantly, the alleged adverse actions were not, on their face, directed toward Plaintiff. Instead, the acts were directed against the homeowners association of which Plaintiff happened to be president.

Defendants' unrebutted explanation for their actions is also persuasive. Defendants informed Plaintiff, as President of the New Holiday Association, of the Association's deficiencies

9

under the governing ordinance and gave the Association a time period to remedy the deficiencies. When the deficiencies were not addressed within the time period, the Association's recognition status was revoked—notably violations apparently could have been readily remedied by Plaintiff. Significantly, when Defendants removed the recognized status of the Association, they stated that the association would be recognized again when the Association was in compliance with the governing ordinance.

Further, at least one of the acts of speech Plaintiff identifies as the basis for Defendants' retaliation—public statements regarding the City and Mayor's handling of David Siebers—occurred *after* the New Holiday Association's recognition status was revoked. That protected activity could not have been a motivating factor in the challenged revocation of the Association's recognized status.

In sum, there is no evidence upon which a jury could conclude that the decision to revoke the New Holiday Association's recognition status was motivated by Plaintiff's protected speech. Accordingly, Plaintiff cannot prove that Defendants retaliated against Plaintiff for his First Amendment protected activities.

### 2.     Plaintiff's Procedural Due Process Claim

Plaintiff next asserts, in his second count, that his rights were violated without "procedural due process." The Fourteenth Amendment proscribes, *inter alia*, a state from depriving a person of property without due process of law. U.S. Const. Amend. XIV, § 1. Procedural due process requires the state to utilize fair procedures before depriving a person of property and substantive due process requires the state to refrain from depriving a person of property for an arbitrary reason. *See*, *e.g.*, *Hyde Park Co. v. Santa Fe City Council,* 226 F.3d 1207, 1210 (10th Cir. 2000).

To prevail on either a procedural or substantive due process claim, a plaintiff must first establish that the defendant's actions deprived plaintiff of a protectible property interest. *Hyde Park*, 226 F.3d at 1210; *see also Greene v. Barrett*, 174 F.3d 1136, 1140 (10th Cir. 1999) ("First, we determine whether the individual had a protected interest under the Due Process Clause."). Generally, a property interest includes a "legitimate claim of entitlement" to some benefit created and defined by "existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Such an entitlement requires that the underlying law creating the entitlement establish standards or criteria to guide the decision makers. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983).

Plaintiff presents no evidence or argument in support of his implicit assertion that he has a legitimate claim of entitlement to the presidency of a *recognized* homeowners association. The assertion has several fatal flaws. Most importantly, it is not readily apparent what benefit accrues to Plaintiff from being the president of a recognized homeowners association. At most, Plaintiff had a *de minimus* interest in being the president of a recognized homeowners association as opposed to being the president of an unrecognized association. As many courts have recognized, a *de minimus* property interest is insufficient to trigger due process protections. *See*, *e.g.*, *Dill v. City of Edmond, Ok.*, 155 F.3d 1193, 1207 (10th Cir. 1998).

If Defendants had directly deprived Plaintiff of his position of president, a closer question might have been presented of whether a more than *de minimus* interest had been denied,[4] but it is easily determined that the denial of the New Holiday Association's recognized status did not deprive Plaintiff, as its president, of a sufficient property interest to invoke constitutional

---

[4] The Court considers it unlikely that Plaintiff would have a legitimate claim of entitlement of the continued presidency of a homeowners association under the governing codes, but the Court need not address that issue here.

11

protections. Absent a protectible property interest, Plaintiff's due process claim must fail.

### 3. Plaintiff's Freedom of Association Claim

In his third count, Plaintiff claims that Defendants violated his right of free association for the purpose of political expression. The Supreme Court has recognized a "right to associate" for the purpose of engaging in activities protected by the First Amendment—speech, assembly, petition for redress of grievances, and the exercise of religion. *See, e.g.*, *Boy Scouts of America v. Dale*, 530 U.S. 640, 678 (2000). To establish such a claim, a plaintiff must prove that the defendant's wrongful conduct had a chilling or interfering effect on the plaintiff's organizational activities and associational rights. *In re First Nat. Bank, Englewood, Colo.*, 701 F.2d 115, 118-19 (10th Cir. 1983).

Plaintiff's freedom of association claim challenges Defendants' decision not to recognize the New Holiday Association. Plaintiff provides neither evidence nor suggestion of how the denial of recognized status chilled participation in the New Holiday Association or interfered with the organization as a forum for engaging in expressive conduct—the Association continued to exist, with Plaintiff as President after it was unrecognized. It was the membership of the Association, not Defendants that dissolved the Association.

Accordingly, the Court finds no basis to conclude that the denial of recognized status of the New Holiday Association affected Plaintiff's right to associate for expressive purposes.

### 4. Plaintiff's Breach Of Contract Claim

Finally, Plaintiff alleges that the City Government Defendants breached a contract with Plaintiff. As the Court found in its December 8, 2003 Memorandum Opinion and Order dismissing the private defendants, Plaintiff does not describe, or produce any evidence of, any contract he had with any of the remaining Defendants. Plaintiff does appear to suggest that the

City had some obligation to Plaintiff through the ordinance establishing the process for recognizing neighborhood associations. None of those obligations, which do not appear to be contractual, would be between the City and Plaintiff; instead, they would be between the City and the Association. The Association is not a plaintiff and Plaintiff does not have standing to raise claims on behalf of the Association. Indeed, it appears that over Plaintiff's objections, the Association no longer exists.

Accordingly, absent any evidence of a contract between the remaining Defendants and Plaintiff, the Court must grant judgment in favor of Defendants on Plaintiff's breach of contract claim.

## CONCLUSION

**IT IS THEREFORE ORDERED** that All Defendants Except Martin Chavez, Greg Payne, and the Office of the Mayor's Motion to Adopt by Reference Defendants Martin Chavez, Greg Payne and the Office of the Mayor's Motion for Summary Judgment, filed January 26, 2004, **[Doc. No. 45]** is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Martin Chavez, Greg Payne and the Office of the Mayor's Motion for Summary Judgment, filed January 26, 2004, **[Doc. No. 43]** is **GRANTED.**

Dated this 10th day of June, 2004.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
    Scott Goold, *pro se*

Attorneys for Defendants
    Stephen G. French
    John E. DuBois, Esq.